UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANNE ELEY, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 4:10-CV-1529 (CEJ) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

This matter is before the Court upon the motion of Anne Eley to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The United States has filed a response in opposition of the motion, and the issues are fully briefed.

### I. Background

On May 14, 2008, following a bench trial, Eley was found guilty of marriage fraud, in violation of 8 U.S.C. § 1325(c). The government proved beyond a reasonable doubt that Eley, a dual citizen of Switzerland and England, entered into a sham marriage with an individual named Billy Joe Middleton to evade the immigration laws. She was sentenced to a six-month term of imprisonment and a two-year supervised release term. The judgment was affirmed on appeal. United States v. Eley, 334 Fed Appx. 778 (8th Cir. 2009) (unpublished opinion).

### II. Discussion

In the instant motion, Eley claims that she was denied effective assistance of counsel at trial. To prevail on a claim of ineffective assistance of counsel, a movant must show (1) that her attorney's performance fell below an objective standard of reasonableness and (2) that she was prejudiced thereby. Strickland v. Washington,

466 U.S. 668, 687 (1984).  The movant must show that her attorney's errors were so serious that they deprived her of her Sixth Amendment right to counsel and denied her the right to a fair trial.  Id.  Judicial scrutiny of counsel's performance must be highly deferential, and the movant must overcome the presumption that the challenged action might be considered sound trial strategy. Id. at 689.  In deciding a claim of ineffective assistance, a court must examine the specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 691.  In order to establish prejudice, and thus satisfy the second prong of the Strickland test, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### 1. Failure to Advise of Potential Immigration Consequences

Eley's first ineffective assistance claim is based on the allegation that her attorney failed to advise her of the effect that a marriage fraud conviction might have on her immigration status.  In support of her claim, Eley cites Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473 (2010), in which Supreme Court held that the Sixth Amendment requires an attorney to  inform his client whether a guilty plea carries a risk of deportation. Padilla, 130 S.Ct. at 1486.   Eley's argument is wholly without merit.   Padilla is not applicable here because Eley did not plead guilty.   Further, regardless of the outcome of the trial, Eley was subject to deportation as a result of Middleton's withdrawal of his petition supporting her change of immigration status.  In Arias-Gonzales v. United States, 486 Fed.Appx. 617 (8th Cir. 2012), the court held that

the movant failed to establish prejudice resulting from his attorney's "failure to discuss deportation as a collateral consequence of conviction," as movant "did not plead guilty and was subject to deportation apart from the criminal proceedings." Id. Eley has not shown that the outcome of the proceedings would have been different had her attorney informed her of the possibility of deportation following conviction.

### 2. Inadequate Pretrial Investigation

Eley's second claim is that counsel failed to investigate and interview witnesses favorable to the defense. Specifically, Eley alleges that counsel failed to call witnesses and present evidence that would have established: (1) Middleton's prior marriages; (2) Middleton's criminal history and prior bad acts; (3) perjury by Middleton and by two of the government's witnesses, Timothy Warren and Joyce Warren; and (4) that someone other than Middleton reported the marriage fraud to the immigration authorities..

Eley asserts that, in the months leading up to trial, no fewer than seven people came forward to offer testimony about her bona fide relationship and marriage to Middleton, and that no fewer than two people offered to give testimony that Middleton was a con-artist and a liar. Regardless of how many witnesses may be available, "failure to investigate everyone whose name happens to be mentioned by [a] defendant does not suggest ineffective assistance." Williams v. Armontrout, 912 F.2d 924, 933 (8th Cir. 1990) (quoting United States v. Cockrell, 720 F.2d 1423, 1428 (5th Cir. 1983)). On the contrary, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Williams, 912 F.2d at 934 (quoting Frank v. Brookhart, 877 F.2d 671, 674 (8th Cir. 1989)).

In her reply, Eley submits statements from a number of individuals whom she claims her attorney could have called to testify for her.  With respect to some of the statements, Eley makes no showing that the witnesses were available to testify at the time of the trial and would have done so if called.  For example, one of the individuals states that she was subpoenaed by the government, but did not want to travel to St. Louis. [Doc. #9-1]  In general, the statements Eley submits consist of little more than the writers' opinions about Eley's good character and about Middleton's bad character.  The statements are rife with subjective observations (*e.g.*, Eley "appeared to be in love,"  and she was "heartbroken" when Middleton left her) that would not have aided the court in determining credibility or in determining Eley's guilt or innocence.

Moreover, many of the statements contain information that would have supported the government's case against Eley.  For example, witness statements that Middleton and Eley did not live together after the marriage ceremony and that Middleton was only interested in getting money from Eley reinforce the government's contention that the marriage was a business arrangement through which Eley hoped to evade deportation and from which Middleton hoped to receive money to avoid arrest for non-payment of child support.

Also, Eley's character and reputation in the community were not at issue.  So, it is unlikely that testimony attesting to those matters would have been admissible.  See Fed.R.Evid. 404 and 405.  Similarly, because defense counsel called one of Middleton's ex-wives as a witness, it is unlikely that the Court would have allowed cumulative testimony from a second ex-wife.

Finally, Eley criticizes her attorney for failing to hire an investigator to interview the government's witnesses.  She does not point to any information that an

investigator would have gathered that was not already known nor does she make any showing of prejudice.

### 3. Inadequate Cross-examination and Evidence Presentation

Eley's third claim is that defense counsel inadequately cross-examined Middleton and failed to present evidence that would have established perjury by Middleton and by Joyce and Tim Warren, witnesses who also testified for the government. As with witness-selection, "cross-examination techniques are matters of trial strategy left to the discretion of counsel." Barnes v. United States, 859 F.2d 607, 608 (8th Cir. 1988). During direct examination, it was disclosed that Middleton had a prior conviction for writing bad checks; that he owed $100,000 for child support; that he moved in with another woman shortly after his fraudulent marriage to Eley; that he married Eley only because he wanted money from her to avoid arrest; and that he decided to report Eley to the immigration authorities because he wanted to resume a relationship with another woman. By the time of cross-examination, there wasn't much more that defense counsel could to do to make Middleton look bad.

Eley asserts that Middleton and the Warrens gave perjured testimony. To support this assertion, she points to the differences between her witnesses' statements and the testimony of the government's witnesses. Eley's assertion is unsubstantiated, as the existence of a discrepancy between testimony of witnesses does not establish perjury. Further, the Court finds no merit in the assertion that defense counsel should have presented evidence contradicting Middleton's testimony that he initiated the marriage fraud report to the authorities. Assuming (as Eley claims) that someone other than Middleton made the report, Eley was not prejudiced by the omission because it would not have affected the outcome of the case.

### III. Conclusion

The Court's scrutiny of defense counsel's performance must be highly deferential, and Eley has failed to overcome the presumption that the challenged actions might be considered sound trial strategy. Strickland, 466 U.S. at 689. After examining the specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," the Court concludes that "in light of all the circumstances, the identified acts or omissions were [*not*] outside the wide range of professionally competent assistance." Id. at 691.

Eley has similarly failed to establish prejudice, as she has not demonstrated that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The rule in this Circuit is that the question of credibility of witnesses and the weight to be given their testimony . . . is primarily one for determination by the trier of facts." Town & Country Elec., Inc. v. N.L.R.B., 106 F.3d 816, 819 (8th Cir. 1997). In the instant case, the Court was required to assess the credibility of the witnesses and, after doing so, resolved all credibility disputes in favor of the government. Thus, the Court determined that Eley knew of the relevant immigration laws even before she married Middleton, and that her statements and actions demonstrated her purpose for entering into the marriage—to avoid those very laws. Thus, even if Eley could demonstrate that defense counsel's performance fell below an objective standard of reasonableness, she cannot demonstrate a reasonable probability that the result of the proceeding would have been different, and therefore, cannot show that she was prejudiced by counsel's purportedly ineffective assistance.

* * *

For the foregoing reasons, the Court concludes that motion and the files and records of this case show that Eley is not entitled to relief under 28 U.S.C. § 2255 based on any of the claims she asserts in her motion. Therefore, the motion will be denied without a hearing. See Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). Additionally, the Court finds that Eley has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See 28 U.S.C. § 2253.

An appropriate Order will accompany this Memorandum.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 9th day of May, 2013.